**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LAURA CONKLIN,

　　　　　Plaintiff - Appellant,

　v.

CITY OF RENO and PETER RINALDO,

　　　　　Defendants - Appellees.

No. 10-15482

D.C. No. 3:08-cv-00452-LRH-RAM

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted April 15, 2011
Pasadena, California

Before: REINHARDT and GOULD, Circuit Judges, and TIMLIN, Senior District
Judge.[**]

　　　To defeat summary judgment on her claim that she was retaliated against for

protected speech in violation of the First Amendment, Conklin must show that her

speech addressed matters of public concern. *Eng v. Cooley*, 552 F.3d 1062, 1070

---

　　　[*]　　This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

　　　[**]　　The Honorable Robert J. Timlin, Senior District Judge for the U.S.
District Court for Central California, sitting by designation.

(9th Cir. 2009).  To determine whether speech addresses matters of private or public concern, we must "examine the 'content, form, and context' of that speech, 'as revealed by the whole record.'"  *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985)) (internal quotation marks omitted).  The content of Conklin's "war stories" had, at most, a minimal bearing on matters of public concern.  Conklin's anecdotes addressed limited harassment at the hands of a trainer almost ten years earlier. Given the limited scope of the harassment she described and the amount of time that had elapsed, Conklin's "war stories" would have had minimal, if any, value to the public in evaluating "the functioning of government" or "the performance of public agencies."  *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103-04 (9th Cir. 2011).  The form and context of the "war stories" likewise weighs against a finding that they addressed a matter of public concern: Conklin's speech was communicated to an audience of one with the apparent intention of entertaining a co-worker, not of illuminating governmental deficiencies or otherwise "serv[ing] the public values of the First Amendment."  *Desrochers v. City of San Bernadino*, 572 F.3d 703, 714 (9th Cir. 2009) (internal quotation marks and citation omitted).

Similarly, Conklin's 1998 statement to her training supervisor, which was made in response to his direct question, constituted a limited "individual personnel

2

. . . grievance[]," *Eng*, 552 F.3d at 1070 (internal quotation marks and citation omitted), rather than speech capable of informing "the public's evaluation of the performance of governmental agencies," *id.* (internal quotation marks and citation omitted), Conklin testified that had she known her training supervisor would reassign her away from Rinaldo, she would not have answered his question truthfully, suggesting that her speech was not intended to improve the department's functioning or otherwise "serve the public values of the First Amendment." *Desrochers*, 572 F.3d at 714. Because Conklin's speech did not address a matter of public concern, the district court's grant of summary judgment to Rinaldo on Conklin's First Amendment claim is affirmed.

Conklin further claims that she was subjected to a hostile workplace in violation of the Fourteenth Amendment by "an ongoing behind the scenes attack . . . by Rinaldo, with sexually charged and lesbian charged remarks affecting her reputation," as well as "Rinaldo's shop talk degrading appellant with gender-based derogation, and his repeated and unnecessary entering of her workplace." However, behind-the-back comments and "entering of [an employee's] workplace" clearly do not amount to "conduct which a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir.

3

1991).  The district court's grant of summary judgment to Rinaldo on Conklin's hostile workplace claim is therefore affirmed.

Finally, Conklin alleges that Rinaldo's filing of an internal affairs complaint against her was an act of sex discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.  Conklin alleges that as a result of Rinaldo's filing of the complaint she was subjected to a prolonged investigation that placed her job in jeopardy; was advised by a veteran officer to secure an attorney (which she did); was subjected to a restrictive supervisory directive that interfered with her ability to discharge her professional responsibilities; and received a formal oral reprimand from a superior even after being cleared of any wrongdoing.  Regardless of whether such harms would suffice to allege a change in "compensation, terms, conditions, or privileges of employment," under Title VII, 42 U.S.C. § 2000e-2(a)(1), a government employee's use of official channels to subject an individual, based upon her sex, to a months-long investigation that places her job in jeopardy, compels her to obtain legal representation, interferes with her professional responsibilities, and results in a documented oral disciplinary action, would, if proven, clearly constitute a deprivation of equal protection of the laws in violation of the Fourteenth Amendment.   The district court was therefore

4

mistaken in concluding that Conklin failed to establish a genuine issue of fact as to whether she had suffered an adverse employment action.

Moreover, while Rinaldo has proffered a legitimate non-discriminatory explanation for filing the internal affairs complaint—namely, that Conklin related disparaging anecdotes about him to their mutual colleagues—"[c]learly sexist, racist, or similarly discriminatory statements or actions" can provide direct evidence of discriminatory intent sufficient to raise a jury question as to whether such explanations are pretextual. *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2004). Rinaldo testified in his deposition that he "may have" referred to Conklin as a "cunt" and "dike," and that "cunt" was a word he reserved for "the [women] [he] dislike[s] the most." In light of these "[c]learly sexist" statements, there is a genuine issue of fact as to whether Rinaldo's proffered explanation for filing the internal affairs complaint was merely a pretext for sexism. *See id.* The district court's grant of summary judgment to Rinaldo on Conklin's Fourteenth Amendment discrimination claim is therefore reversed.

The parties shall each bear their own costs.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED.**

5